IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


BENNIE E. SMITH,
         Petitioner,

vs.                                                         Case No. 3:07cv112/RV/EMT

WALTER A. McNEIL,
         Respondent.
_____/

### REPORT AND RECOMMENDATION

 This cause is before the court on Petitioner's petition for writ of habeas corpus, filed under 28 U.S.C. § 2254, and supporting memorandum (Docs. 1, 2).  Respondent filed an answer to the petition with relevant portions of the state court record (Doc. 11).  Petitioner filed a reply and a supplement thereto (Docs. 16, 32).

 The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.  BACKGROUND AND PROCEDURAL HISTORY

 The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 11, Exhibits; Doc. 16 at 1).  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with burglary of an unoccupied dwelling and grand theft

($300.00 or more but less than $5,000.00) (Doc. 11, Ex. B at 2).[1] Following a jury trial on April 22, 2003, Petitioner was found guilty as charged (Ex. B at 10; Ex. C). At Petitioner's sentencing hearing on June 5, 2003, the trial court adjudicated Petitioner guilty and determined that he qualified for sentencing as a violent career criminal, a habitual felony offender, and a prison releasee reoffender (Ex. B at 13–33). Petitioner was sentenced to forty (40) years of imprisonment on the burglary count, with a mandatory minimum term of thirty (30) years (the habitual felony offender sanction) to run concurrently with a mandatory term of fifteen (15) years (the prison releasee reoffender sanction), and a term of 94.8 months on the grand theft count, to run concurrently with the sentence on the burglary count (Ex. B at 13–24, 69–76).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"). Petitioner's counsel filed a brief asserting he was unable to make a good faith argument that reversible error occurred in the trial court (Ex. F). Petitioner declined to file a pro se brief. On April 6, 2004, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing May 18, 2004 (Exs. I, J). Smith v. State, 907 So. 2d 521 (Fla. 1st DCA 2004) (Table). Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On July 20, 2004, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. L at 1–2). The trial court denied the motion in an order rendered September 9, 2004 (*id.* at 3–5). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion, with the mandate issuing August 8, 2005 (Exs. M, N).

On February 1, 2005, Petitioner filed a petition for writ of habeas corpus in the Florida Supreme Court (Ex. O). The state supreme court transferred the pleading to the trial court for consideration as a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. P). On July 22, 2005, the trial court dismissed the petition, construed as a Rule 3.850 motion, on the ground that it was legally insufficient under Rule 3.850 (Ex. R). The

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 11).

dismissal was without prejudice to Petitioner's refiling a facially sufficient motion (*id.*). Petitioner re-filed a Rule 3.850 motion on October 26, 2005 (Ex. S at 1–33). On March 30, 2006, the trial court summarily denied the motion (*id.* at 54–65). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on December 7, 2006, with the mandate issuing February 2, 2007 (Exs. V, W). Smith v. State, 946 So. 2d 18 (Fla. 1st DCA 2007) (Table).

Petitioner filed the instant habeas action on March 12, 2007 (Doc. 1 at 1). Respondent concedes that the petition was timely filed (Doc. 11 at 27–28).

II.    TRIAL EVIDENCE

Review of the evidence adduced at trial provides a helpful context in considering Petitioner's claims. The State presented testimony from two witnesses, Rhonda Coggeshall Sheppard, the victim, and Brandon Floyd, a deputy with the Escambia County Sheriff's Department (Doc. 11, Ex. C at 8–23). Ms. Coggeshall testified that on November 27, 2002, she arrived at her residence at approximately 7:00 p.m. (*id.* at 8–9). She entered her bedroom and noticed that her television, radio, and jewelry box were missing (*id.* at 9). She later discovered that groceries were missing, and she realized that a diamond ring and a watch that she kept in the jewelry box were missing (*id.* at 9–10). She estimated the total value of the items as over $675.00 (*id.* at 10). Ms. Coggeshall testified that although the front door of her home was capable of being locked, a person could open it without causing damage, because the home had been broken into before she lived there (*id.* at 10–11). She stated that was apparently how the burglar entered her home (*id.* at 11). Ms. Coggeshall testified that she did not give anyone permission to be in her home while she was away, nor did she give anyone permission to take the items that were stolen (*id.*). She stated she called the police, and they began investigating (*id.* at 11). The officers eventually left, but then returned at her request (*id.*). Ms. Coggeshall testified that shortly after the officers arrived the second time, they recovered the stolen items and returned them to her (*id.*).

On cross-examination, Ms. Coggeshall testified that she never saw Petitioner enter her home, nor did she see him take any of her property (*id.* at 12–13). She denied that any of the items had been placed in a trash pile near her home (*id.* at 13).

Deputy Floyd testified that he responded to Ms. Coggeshall's residence at 7:00 p.m. on November 27 (*id.* at 14–15).  He observed that her front door was broken from a previous break-in (*id.* at 15).  Within a few hours after he left Ms. Coggeshall's residence, he was asked to return (*id.*). He and Deputy Frank Forte spoke with Ms. Coggeshall and then made contact with Petitioner (*id.* at 15–16).  The deputies, both wearing their uniforms, knocked on Petitioner's door, and Petitioner opened it (*id.* at 16–17).  Deputy Floyd asked Petitioner if he could speak with him, and Petitioner responded yes, but he preferred to speak outside (*id.* at 16).  Deputy Floyd testified that when Petitioner stepped outside, he (Deputy Floyd) told Petitioner that he was not under arrest, but he advised him of his <u>Miranda</u>[2] rights, that is, that he had the right to remain silent, and he did not have to talk to the officers if he did not want to (*id.* at 17).  Petitioner appeared to understand his rights and did not ask any questions regarding his rights, and he agreed to talk with the officers (*id.*).  The deputies asked Petitioner if he knew anything about Ms. Coggeshall's residence, and Petitioner responded no (*id.*).  Petitioner then consented to the officers' searching his residence (*id.*).  Deputy Floyd testified that he continued to talk to Petitioner while Deputy Forte went inside Petitioner's home (*id.* at 18).  Deputy Forte found an item of Ms. Coggeshall's stolen property, and when the officers questioned Petitioner about it, Petitioner responded that all of the stolen items were in his home (*id.* at 18–19).  Petitioner then located all of the items (*id.* at 19).  When the officers asked Petitioner how he obtained the items, Petitioner responded that he entered Ms. Coggeshall's residence through the front door because it was unlocked (*id.*).  Deputy Floyd testified that he and Deputy Forte took the items to Ms. Coggeshall, and she identified the items as hers (*id.*).  Deputy Floyd identified Petitioner as the person with whom he spoke that evening (*id.* at 16)

On cross-examination, Petitioner's counsel questioned Deputy Floyd regarding his testimony that he advised Petitioner of his <u>Miranda</u> rights:

> Q.        . . . you're absolutely positive that when you spoke to Mr. Smith that he was aware of his <u>Miranda</u> rights, that he didn't have to talk to you?
>
> A.        Yes, I am.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 694 (1966)

> Q.     There's nothing that would have given you any reason to doubt whether or not he understood that?
>
> A.     No, sir.  He advised me he did understand them before we—
>
> Q.     Did he, you know—and then you said that he consented to the search of his home?
>
> A.     Uh-huh.
>
> Q.     You made him aware that he didn't have to let you search the home?
>
> A.     Yes, we did.  We told him that, you do not have to let us.
>
> Q.     And he did let you search his home?
>
> A.     Yes, I did, upon his consent.
>
> Q.     Okay.  And once you found the items that were in his trailer, okay, did he ever make any admissions to how they specifically got there?  Did he ever say, you know, someone else broke into her home and put them in his home?
>
> A.     No.  We asked him how the items got there.  He kind of beat around the bush and then he told us he went in to her home and through the front door and took them.

(*id.* at 20–21).

The State rested, and Petitioner testified in his own behalf.  Petitioner admitted that some of Ms. Coggeshall's property was found in his home, but he stated he retrieved the television and a jewelry box from near Ms. Coggeshall's garbage can (*id.* at 23–26).  He denied he took the items from her trailer (*id.* at 28–29).  Petitioner testified, "To my knowledge, I never been [sic] in there [Ms. Coggeshall's residence]." (*id.* at 27).  Petitioner testified he talked to the officers that evening and brought them the television (*id.* at 26–27).  Petitioner denied he told the officers that he went into Ms. Coggeshall's home; he stated the officers misunderstood him because he has a speech problem which is exacerbated when he has been consuming alcohol, which he had been doing that night (*id.* at 27–28).  Petitioner testified that his fiancee told him who removed the items from Ms. Coggeshall's trailer, but his fiancee died before trial (*id.* at 29).  He testified he told the officers that his fiancee knew who committed the crime (*id.* at 27).

On cross-examination, Petitioner again testified that he told the police officers that his fiancee knew who took the items from Ms. Coggeshall, but the officers arrested him regardless (*id.* at 29–30).  Petitioner testified that even though he knew the identity of the burglar, he did not provide it to the police during the five months between his arrest and trial (*id.* at 30–31).  Petitioner again admitted that Ms. Coggeshall's television and jewelry box were in his home (*id.* at 31).  He testified he had never been in Ms. Coggeshall's residence (*id.* at 32).  At a side-bar conference, the prosecutor requested permission to question Petitioner about whether he had stolen a vacuum cleaner from Ms. Coggeshall just prior to the burglary and then reimbursed her for it (*id.*).  Defense counsel offered no argument, and the trial court ruled that this line of questioning was proper impeachment (*id.*).  The prosecutor then questioned Petitioner as follows:

> Q.     You had just reaffirmed to this jury that you have never been inside Ms. Coggeshall's residence before, right?  To my knowledge I have never been in her house?
>
> A.     To my knowledge I can't remember being in her residence.
>
> Q.     Okay.  That's not what you said.  To my knowledge I have never been there before, is what you told Mr. Burns [defense counsel].  And I repeat it back to you what you said.  Right?
>
> A.     I cannot remember going in there.
>
> Q.     Didn't you go in her residence previously and take a vacuum cleaner from her?
>
> A.     No, sir.
>
> Q.     Didn't you then turn around and pay her back for that vacuum cleaner through your attorney on docket day and reimburse her for that?
>
> A.     I gave her $275 to drop the charges.
>
> Q.     To drop the charges?
>
> A.     These charges right here.
>
> Q.     For the vacuum cleaner that you had previously taken?

A.    Not the vacuum cleaner.  Not the vacuum cleaner.

Q.    You gave her money to drop the charges?

A.    I had nothing to do with the vacuum cleaner.  I have no idea where it was.  That was her boyfriend who took the vacuum cleaner.

Q.    The boyfriend did everything, didn't he?

A.    Yes, sir.

Q.    You didn't do anything?

A.    He was smoking crack.

Q.    What were you smoking?

A.    I was drinking and smoking pot.

Q.    Okay.

A.    At the time I didn't know he was smoking crack.  I found out—

Q.    But you were smoking pot?

A.    Yes, little bit of home grown.

Q.    Oh, home grown?  Okay.  But you paid her back for that vacuum cleaner, didn't you?

A.    He give me the money to pay her back to drop the charges.

Q.    He gave you the money back?

A.    He gave her the money to drop the charges.

Q.    You gave that check to your attorney so that she would drop the charges on you?

A.    Right, for this here, not for the vacuum cleaner.

Q.    But it's her boyfriend?

A.      Right.

(*id.* at 33–35).

Petitioner again acknowledged he did not tell police that Ms. Coggeshall's boyfriend committed the burglary, even though he and the boyfriend were partying together before Petitioner's trial (*id.* at 36–37).  Petitioner denied that he told police he went into Ms. Coggeshall's trailer and removed her property (*id.* at 37).  He admitted he had previously been convicted of nineteen (19) felonies (*id.*).

On re-direct examination, Petitioner testified that his fiancee told him that Ms. Coggeshall's boyfriend went into Ms. Coggeshall's trailer, took the television and jewelry box, and placed them beside Ms. Coggeshall's garbage can, where Petitioner found them (*id.* at 38–39).  Petitioner testified he did not anticipate being prosecuted for the burglary because Ms. Coggeshall's boyfriend gave him $275 to pay to Ms. Coggeshall, with the understanding that the charges would be dropped (*id.* at 39–40).

On re-cross examination, Petitioner admitted he knew that the television and jewelry box were not his, and he knew that Ms. Coggeshall had not placed the items in the garbage, but he took them from the garbage despite this knowledge (*id.* at 40–43).

The defense called Ms. Coggeshall as a witness.  Defense counsel presented Ms. Coggeshall with a document which stated the following:

> "I, Rhonda Coggeshall request the State Attorney's Office to drop charges against the above defendant as I do not wish to prosecute this defendant nor do I wish to testify in court against this defendant.  I have not be [sic] promised anything in return for this.  This is done freely and voluntarily, not against my will.  My reasons for requesting these charges be dropped are that all items are recovered and items that weren't recovered have been paid for.  So I see no reason to pursue charges any further."

(*id.* at 45–46).  The document was admitted as evidence and published to the jury (*id.* at 46).

On cross-examination, Ms. Coggeshall testified she heard Petitioner tell one of the police officers that he entered her residence through the front door and took the property (*id.* at 47).  She testified Petitioner's speech was not too slurred for her to understand him (*id.*).  Ms. Coggeshall testified that the $275 payment she received from Petitioner was reimbursement for the items that were taken but not returned to her (*id.* at 48–49).  She stated she spoke to Petitioner several times

after the burglary, and he admitted he went into her residence and took the items (*id.* at 50). She testified Petitioner admitted to her that he took a carpet shampooer from her home, and the $275 payment was reimbursement for the shampooer, since everything taken from her home on November 27 was recovered by police except the stolen groceries (*id.* at 50–51).

The defense rested, and the State called Deputy Forte as a rebuttal witness. Deputy Forte testified that Petitioner seemed "a little nervous" when he made contact with him (*id.* at 52). Deputy Forte explained to Petitioner, as did Deputy Floyd, that they were investigating a burglary next door (*id.* at 52–53). He then asked Petitioner if he knew anything about the burglary, and Petitioner stated he did not (*id.* at 53). Deputy Forte testified he directed Deputy Floyd to read Petitioner a <u>Miranda</u> warning, and Deputy Floyd did so (*id.*). Petitioner told Deputy Floyd that he understood his rights (*id.*). Deputy Forte asked Petitioner if he had any property in his home that did not belong to him, and Petitioner responded no (*id.*). Deputy Forte then asked Petitioner for consent to search his trailer, and Petitioner consented (*id.*). Deputy Forte testified that he walked into the trailer, and Deputy Floyd entered with Petitioner (*id.*). He stated he observed a television and a "boom box," and then found the jewelry box in a bedroom (*id.* at 53–54). When he asked Petitioner where the items came from, Petitioner said he received them from friends (*id.* at 54). Deputy Forte asked Petitioner for the names of those friends, but Petitioner said he did not know their names (*id.*). The deputies removed the items from Petitioner's trailer, and Ms. Coggeshall identified the items as belonging to her (*id.*). Ms. Coggeshall told Deputy Forte that a carpet cleaner/shampooer was also inside Petitioner's trailer, but Deputy Forte did not find it (*id.*). Deputy Forte testified that Petitioner eventually admitted he entered Ms. Coggeshall's residence and took the items that were recovered from his trailer (*id.* at 54–55). Lastly, Deputy Forte testified he had no difficulty understanding Petitioner, and Petitioner did not have any speech impediment that prevented him from understanding him (*id.* at 55).

On cross-examination, defense counsel asked Deputy Forte if he advised Petitioner that he did not have to consent to the search of his trailer, and Deputy Forte responded, "Absolutely." (*id.* at 56). Defense counsel asked, "So this was freely and voluntarily given?" (*id.*). Deputy Forte responded, "Absolutely." (*id.*).

Defense counsel made a motion for judgment of acquittal, which the trial court denied (*id.*). Counsel then made closing arguments, and the court instructed the jury (*id.* at 58–78).  The jury deliberated for thirty-seven (37) minutes and returned a verdict of guilty as charged on both counts (*id.* at 78–80).

III.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* <u>Panetti v. Quarterman</u>, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

   A.    <u>Ground One: "Counsel failed to suppress State's erroneous presentment of Defendant's faulty confession."</u>

Petitioner contends his trial counsel provided constitutionally ineffective assistance by failing to seek suppression of Petitioner's statements to Ms. Coggeshall and Deputies Floyd and Forte (Doc. 1 at 6). He asserts that these three witnesses testified at trial that he confessed to them that he entered Ms. Coggeshall's home and took her property (*id.*). Petitioner states he told his counsel, both prior to trial and during trial, that he did not make the alleged statements to law enforcement or Ms. Coggeshall (*id.*). He further states there was no signed or recorded confession produced at trial, and no other evidence to corroborate the witnesses' testimony (*id.*). Petitioner contends counsel should have filed a motion to suppress the unsupported assertions of the three witnesses, or counsel should have objected to their testimony at trial (*id.*).

In Petitioner's supporting memorandum, he argues that an additional basis for counsel's seeking suppression of his statements to law enforcement was the officers' failure to advise him of his <u>Miranda</u> rights (Doc. 2 at 4). Petitioner concedes that trial counsel questioned one of the officers

as to whether Petitioner was advised of his <u>Miranda</u> rights, but this was insufficient because there was no "documentary proof," in the form of a signed waiver or recorded statement, that he was advised of his rights and waived them (*id.* at 4–5). Petitioner asserts that if counsel had investigated this issue, he would have discovered that there was no evidence to corroborate the officer's testimony that Petitioner was advised of his <u>Miranda</u> rights and waived them (*id.* at 5).

Respondent concedes Petitioner exhausted this claim by presenting it in his Rule 3.850 motion (Doc. 11 at 29). Respondent contends Petitioner failed to demonstrate entitlement to relief under the AEDPA (*id.* at 29–31).

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1279 (11th Cir. 2003); <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for

example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground One in his Rule 3.850 motion (Ex. S at 7–10).  In the state court's written opinion denying Petitioner's motion, the state court identified the Strickland standard as the controlling legal standard for analyzing claims of ineffective assistance of counsel (id. at 55–56).  Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or that the state court decision was an unreasonable application of Strickland.

The state court found as fact that the position asserted by the defense at trial with regard to the statements at issue was that the statements were never made, as evidenced by Petitioner's trial testimony to this effect (id. at 56–57).  The court concluded that counsel could not be deemed ineffective for failing to seek suppression of the statements in light of Petitioner's position that the statements were never made (id. at 57).  With regard to counsel's failure to seek suppression of Petitioner's statements to law enforcement on Miranda grounds, the state court found as fact that the officers testified that Petitioner was verbally advised of his Miranda rights, he understood those rights, and he had no questions regarding his rights (id. at 57).  The court additionally found that Petitioner's counsel questioned Deputy Floyd, one of the officers, as to whether he was "absolutely positive that . . . Mr. Smith was aware of his Miranda rights," and Deputy Floyd responded that he was positive (id.).  The state court rejected as legally unsupportable Petitioner's assertion that the lack of a written waiver demonstrated that the confession never occurred (id.).  The court concluded

that Petitioner failed to demonstrate any valid basis for suppression of the statements; therefore, he was not entitled to relief (*id.*).

In light of the testimony of Ms. Coggeshall and Deputy Forte, Petitioner has failed to show that defense counsel had a meritorious basis for seeking suppression of Petitioner's statements to Ms. Coggeshall or the police officers.   The fact that there was no documentary evidence to corroborate Ms. Coggeshall's testimony did not render her testimony inadmissible.  Likewise, the fact that the officers' testimony that Petitioner was advised of his Miranda rights and waived them, and that he confessed to taking the property from Ms. Coggeshall's residence was not corroborated with documentary evidence, such as a written or recorded waiver or confession, did not provide a legal basis to suppress Petitioner's statements or otherwise render the officers' testimony inadmissible.  Therefore, defense counsel's failure to seek suppression or exclusion of testimony regarding Petitioner's statements to Ms. Coggeshall and the officers was not a decision that no reasonable lawyer would have made.  Furthermore, Petitioner failed to show a reasonable probability that the trial court would have suppressed or excluded the testimony concerning Petitioner's statements if counsel had requested exclusion on grounds that the testimony was not corroborated with documentary evidence or sought suppression of the statements on Miranda grounds. Therefore, Petitioner failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was based upon an unreasonable determination of the facts or was an unreasonable application of Strickland.

B.      Ground Two:  "Counsel failed to object to bias [sic] hearsay statements by the victim during trial."

Petitioner contends defense counsel should have objected to the following two statements by Ms. Coggeshall made during her trial testimony:  (1) "Someone—a friend of mine come down the street and said that they had seen Bennie—," and (2) "I didn't see him but there was eyewitness [sic] that did see him" (Doc. 1 at 7).  Petitioner contends the statements were inadmissible hearsay (*id.*).  He contends he was prejudiced by admission of the statements because the jury heard the statements, and he was deprived of the opportunity to confront the alleged eyewitness who made the statements (*id.*; Doc. 2 at 6).  In his reply brief, Petitioner asserts that if counsel had objected to the

hearsay statements, and the judge had instructed the jury to disregard them, there is a reasonable probability that the jury may have reached a different verdict (Doc. 16 at 7).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 11 at 31). Respondent contends Petitioner failed to demonstrate entitlement to relief under the AEDPA (*id.* at 31–33).

### 1. Clearly Established Federal Law

The Supreme Court's standard for analyzing claims of ineffective assistance of counsel is set forth *supra*.

### 2. Federal Review of State Court Decision

In Ground Two of Petitioner's Rule 3.850 motion, he argued that defense counsel was ineffective for failing to object to only one statement by Ms. Coggeshall, that is, "Someone—a friend of mine come down the street and said that they had seen Bennie—" (Ex. S at 11–12). Petitioner did not challenge the second statement by Ms. Coggeshall (that is, her statement that "I didn't see him but there was eyewitness [sic] that did see him") in his claim before the state court. The state court determined that Petitioner failed to demonstrate that defense counsel performed deficiently because Ms. Coggeshall never completed the allegedly prejudicial statement before the prosecutor interrupted her (*id.* at 57). The state court further concluded that Petitioner failed to demonstrate he was prejudiced by counsel's failure to object because Petitioner's assertion as to how Ms. Coggeshall would have completed her sentence and what conclusion the jury would draw from her testimony was strictly conjecture (*id.* at 57–58).

Regardless of whether Petitioner exhausted his claim with regard to counsel's failure to object to the second statement by Ms. Coggeshall, Petitioner has failed to satisfy the <u>Strickland</u> standard with regard to counsel's failure to object to either of her statements. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). The trial transcript shows that Ms. Coggeshall's first statement was in response to the prosecutor's question whether she found anything unusual when she went home on November 27 (Doc. 11, Ex. S at 9). She responded:

> A. When I went into my bedroom to get my clothes to go take a shower, I noticed that my TV and the radio was gone and the jewelry box. And then I called the sheriff's department and had an officer respond, and they did a fingerprint thing which nothing ever showed up. And then someone—a friend of mine come down the street and said that they had seen Bennie—

(*id.*). The prosecutor stopped her mid-sentence and told her to limit her testimony to what she saw when she arrived home (*id.*). She then testified that she discovered her television, radio, and jewelry box missing (*id.*). Ms. Coggeshall's second statement was made during defense counsel's cross-examination:

> Q. What I'm concerned with here is whether or not did [sic] you ever witness Mr. Smith going into your residence? Did you ever see him go into your home?
>
> A. I didn't see him but there was an eyewitness that did see him.
>
> Q. But you didn't see him, correct?
>
> A. No, sir.
>
> Q. So you didn't see him take anything, right?
>
> A. No, sir.
> . . . .
> Q. . . . Do you have any independent firsthand knowledge of Mr. Smith entering your home, you?
>
> A. I didn't see him but he did state to the police officers—
>
> Q. Ma'am, I just want to know what you know, not what anybody else said to you or anything else. I want to know what you know.
>
> A. Okay. I wasn't there at the time it was broke [sic] into, sir.
>
> Q. So you have no independent knowledge of whether or not he broke into your apartment?
>
> A. No. I did not see him.

(*id.* at 12–13).

Petitioner has failed to show a reasonable probability that the outcome of his trial would have been different if counsel had objected to the hearsay statements.  Although counsel had a meritorious basis for objecting to the statements, and there is a reasonable probability that the trial court would have sustained objections by counsel and directed the jury to disregard the hearsay statements, there is no reasonable probability of a different verdict.  The evidence that Ms. Coggeshall's television, radio, and jewelry box were found in Petitioner's trailer the same evening that she reported them missing, the evidence that Petitioner admitted to Ms. Coggeshall and Deputies Floyd and Forte that he took the items from Ms. Coggeshall's residence, and the evidence that he paid her $275 to drop the charges against him is overwhelming proof of his guilt.  In light of this overwhelming evidence, there is no reasonable probability that a reasonable juror would have had reasonable doubt about Petitioner's guilt if the jury had been instructed to disregard Ms. Coggeshall's statements that a friend saw Petitioner, and an eyewitness saw Petitioner go into her home.  Therefore, Petitioner is not entitled to federal habeas relief on this claim.

C.      Ground Three:  "Counsel failed to procure a potential exculpatory, eyewitness statement and investigate the said person."

Petitioner next claims that defense counsel provided ineffective assistance by failing to preserve the testimony of Cindy English, Petitioner's former fiancee, by conducting a pretrial interview or deposition (Doc. 1 at 7–8).  Petitioner asserts that if counsel had deposed Ms. English, he could have presented her testimony at trial to establish that Mr. Steve Wilson, the victim's boyfriend, admitted to Ms. English that he had removed the items from Ms. Coggeshall's home and placed them beside her garbage can (*id.*; Doc. 2 at 8–9).  Petitioner contends this exculpatory evidence would have proven that he did not commit the burglary (Doc. 1 at 8; Doc. 2 at 9).  In Petitioner's reply brief, he states that he provided counsel with Ms. English's name (Doc. 16 at 8).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 11 at 33–34).  Respondent contends Petitioner failed to demonstrate entitlement to relief under the AEDPA (*id.* at 33–35).

1.      Clearly Established Federal Law

The Supreme Court's standard for analyzing claims of ineffective assistance of counsel is set forth *supra*.  Pursuant to Strickland, counsel has a duty to make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary. <u>Strickland</u>, 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding. <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting <u>Magill v. Dugger</u>, 824 F.2d 879, 886 (11th Cir. 1987)). Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings. <u>Young v. Zant</u>, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance). Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. <u>Chandler</u>, 218 F.3d at 1314 n.14 (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978).[4]

> 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Six in his Rule 3.850 motion (Ex. S at 16–17). In the state court's written opinion denying Petitioner's claim, the court determined that Petitioner failed to show that defense counsel was aware of the necessity to preserve Ms. English's testimony, as Petitioner did not allege that Ms. English's death was either anticipated or, if it was, that counsel was made aware of that fact (*id.* at 59–60). Furthermore, defense counsel elicited testimony from Petitioner that his fiancee told him that Ms. Coggeshall's boyfriend went into Ms. Coggeshall's trailer, took the items, and placed them beside the garbage can, from where Petitioner retrieved the items (*id.* at 60). Therefore, the court concluded, Petitioner failed to demonstrate that counsel's failure to "preserve" Ms. English's testimony was deficient performance (*id.*).

---

[4] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

The record confirms the trial court's finding that Petitioner made no allegation or showing that defense counsel was aware that Ms. English's death prior to trial was anticipated.  In the absence of any indication that defense counsel was aware of Ms. English's potential unavailability at trial, it was not unreasonable for counsel not to depose her.  Furthermore, Petitioner's assertions as to what Ms. English would have said during a pre-trial deposition are purely speculative.  Additionally, the jury heard the general substance of Ms. English's proposed testimony, that is, that Ms. Coggeshall's boyfriend admitted to her (Ms. English) that he had removed the items from Ms. Coggeshall's home and placed them beside her garbage can, through Petitioner's testimony when he stated, "She [Ms. English] said Ms. Coggeshall's boyfriend went into the trailer, got the stuff and sat it beside the garbage can." (Doc. 11, Ex. C at 38).  Therefore, Petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different if counsel had preserved Ms. English's testimony.  As Petitioner failed to satisfy either component of the <u>Strickland</u> standard, the state court's denial of his claim was not an unreasonable application of clearly established federal law.

    D.    <u>Ground Four:  "Defense counsel failed to file a motion to clarify or correct a major defect in State's charging information."</u>

Petitioner contends defense counsel should have filed a motion for a statement of particulars, pursuant to Rule 3.140(n) of the Florida Rules of Criminal Procedure, showing the approximate time the offense occurred (Doc. 1 at 8; Doc. 2 at 10).  Petitioner argues that the information was so vague that it hindered preparation of a defense (Doc. 2 at 10–11).  Petitioner asserts that if trial counsel had filed such a motion, it is possible that he could have established an alibi, namely, that he was at his mother's house at the time of the burglary, and counsel could have presented testimony from Petitioner's mother verifying that he was at her home at the time of the burglary (Doc. 1 at 8; Doc. 2 at 10–11).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 11 at 36).  Respondent contends Petitioner failed to demonstrate entitlement to relief under the AEDPA (*id.* at 36–38).

    1.    Clearly Established Federal Law

The Supreme Court's standard for analyzing claims of ineffective assistance of counsel is set forth *supra*.

### 2. Federal Review of State Court Decision

Petitioner raised this claim as Ground Seven of his Rule 3.850 motion (Doc. 11, Ex. S at 18–19). The state court determined that Florida law, specifically, Rule 3.140 of the Florida Rules of Criminal Procedure, does not require the State to specify the exact time of the crime in the information; therefore, defense counsel was not deficient for failing to request that the State do so (*id.* at 61). The court further determined that under Rule 3.140, if counsel had moved for a statement of particulars, the State would have been required only to "specify as **definitely as possible** the place, **date** and all other material facts of the crime charged that are specifically requested and **are known to the prosecuting attorney** . . ." (*id.*) (emphasis in original). The state court found that Petitioner made no showing that the State would have been able to be any more specific as to the time of the offense because the victim was not home at the time of the burglary (*id.*). The court further found that Petitioner presented testimony that he went to his mother's home before the crime was discovered, and that testimony was not refuted (*id.*). The state court concluded that Petitioner failed to demonstrate that the results of the trial would have been different had counsel requested a statement of particulars or if Petitioner's mother had testified, because the testimony would have established only that Petitioner had an alibi for approximately thirty minutes on the day in question (*id.*). The court therefore concluded that Petitioner was not entitled to relief (*id.*).

The state court's determination that defense counsel had no legal basis for requesting that the State provide a specific time of the burglary was based purely on Florida law. This court must defer to the state court's determinations of state law issues, including this determination that defense counsel had no meritorious basis to request that the State provide the approximate time of the burglary. Although an ineffective assistance of counsel claim is a federal constitutional claim, which the court considers in light of the clearly established rules of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (affording deference to state court's decision "to the extent it decide[d] the validity of [the petitioner's] underlying state law claims") (emphasis added) (superseded on other grounds); *see also*

<u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1354–55 (11th Cir. 2005); <u>Callahan v. Campbell</u>, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them . . ." (quotation and omitted)).

In light of the state court's determination that defense counsel had no meritorious basis for requesting a statement of particulars under Rule 3.140, the state court's conclusion that counsel was not deficient was not unreasonable. Likewise, the state court's conclusion that Petitioner failed to establish he was prejudiced by counsel's failure to request a statement of particulars was not unreasonable. Petitioner failed to make any showing that the prosecutor would have been able to provide a specific time of the burglary. Although the prosecutor had information that Ms. Coggeshall discovered at approximately 7:00 p.m. that her home had been burglarized, Petitioner has failed to show that the prosecutor had any information regarding when the items were actually removed from her home. Therefore, Petitioner failed to establish a reasonable probability that the prosecutor would have able to provide a specific time of the actual burglary if defense counsel had requested a statement of particulars. As Petitioner failed to satisfy either prong of the <u>Strickland</u> standard, the state court's denial of his claim was not an unreasonable application of <u>Strickland</u>.

E.      <u>Ground Five: "Counsel failed to object to inconsistent statements made by both Sheriff's officers, Mr. Floyd and Mr. Forte."</u>

Petitioner contends defense counsel performed ineffectively by failing to impeach Deputy Floyd and Deputy Forte with each other's testimony (Doc. 1 at 8–9; Doc. 2 at 12–13). Petitioner asserts the testimony of the deputies conflicted, and if counsel had discredited their testimony by pointing out the inconsistencies, there is a possibility that the outcome of his trial would have changed (Doc. 1 at 9).

Respondent contends that although Petitioner exhausted his claim that trial counsel was ineffective for <u>failing to object</u> to the deputies' conflicting testimony, Petitioner failed to properly exhaust his claim that counsel was ineffective for <u>failing to impeach</u> each deputy's testimony with the other deputy's testimony (Doc. 11 at 38–41). Respondent contends Petitioner failed to present his argument concerning counsel's failure to impeach in his Rule 3.850 motion and presented it for the first time in his brief on appeal of the state court's denial of his motion (<i>id.</i> at 39–40).

Respondent contends Florida courts require that the same issue be presented on appeal as was presented to the trial court, which Petitioner failed to do (*id.* at 40).  Furthermore, Petitioner may not return to state court to attempt to raise the impeachment aspect of his claim because any such attempt would be time barred (*id.*).  Moreover, Petitioner failed to show cause for his failure to properly exhaust his failure to impeach claim, nor can he establish prejudice; therefore, this aspect of his claim is procedurally barred from federal review (*id.* at 40–41).

On the exhaustion issue, Petitioner states in his federal petition that he raised this ground for relief in Ground Nine of his Rule 3.850 motion (Doc. 1 at 9), but he acknowledges that he "clarif[ied]" his claim in his state appellate brief in the Rule 3.850 proceedings by arguing that counsel was ineffective for failing to impeach the deputies' inconsistent statement by using one officer's statement to discredit the other officer's statement (*id.*; Doc. 2 at 12).  Petitioner states his "original 3.850 wording . . . may have been addressed improperly" (Doc. 2 at 12), and he "would like to clarify the above ground, as he did in his appellate brief" (Doc. 1 at 9).

In Ground Nine of Petitioner's Rule 3.850 motion, Petitioner stated his claim as follows:

<u>INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL</u>

COUNSEL FAILED TO OBJECT
TO INCONSISTANT [SIC] STATEMENTS
MADE BY BOTH OFFICERS
MR. FLOYD AND MR. FORTE.

(Ex. S at 23).  In support of his claim, Petitioner asserted that during trial, Deputy Floyd testified that Deputy Forte entered Petitioner's home while he (Floyd) and Petitioner stayed outside; however, Deputy Forte testified that he (Forte) entered Petitioner's home, and Deputy Floyd and Petitioner entered behind him (*id.*).  Petitioner argued defense counsel should have objected to the inconsistent testimony and brought the inconsistency to the jury's attention (*id.* at 23–24).  Petitioner argued he was prejudiced by counsel's failure to object to the inconsistent testimony and counsel's failure to "damage their credibility" (*id.* at 24).

The state court's written opinion indicates that the court liberally construed Petitioner's claim as arguing that defense counsel should have emphasized to the jury the inconsistencies in the deputies' testimony (*see* Doc. 11, Ex. S at 62).  The state court first determined that the fact that two witnesses testify inconsistently did not provide a basis for counsel to "object" to the testimony (*id.*).

The court further found that the inconsistency was clearly before the jury for their consideration, and the defense only benefitted from the inconsistency (*id.*). The court found that Petitioner conceded in his trial testimony that the stolen items were in his home, and the only point of contention was how the items got there (*id.*). The court determined that the inconsistency in the deputies' testimony related only to how they came into possession of the stolen items recovered from Petitioner's home, which was not in dispute (*id.*). Therefore, Petitioner failed to demonstrate that emphasizing the inconsistency to the jury would have produced a different result at trial (*id.*).

Based upon Petitioner's arguments in his Rule 3.850 motion and the state court's analysis of his claim, the undersigned concludes that Petitioner fairly presented to the state court his argument that defense counsel was ineffective for failing to object or highlight to the jury the inconsistency in the deputies' testimony. The undersigned further concludes that the state court adjudicated the merits of both aspects of Petitioner's claim. Therefore, the court will review the claim under the AEDPA standard.

As previously noted, the state court cited the <u>Strickland</u> standard as the controlling legal standard for analyzing Petitioner's ineffective assistance of counsel claims (*see* Doc. 11, Ex. S at 55–56). Therefore, Petitioner is entitled to relief on his claim only if he demonstrates that the state court's decision was based upon an unreasonable determination of the facts, or the court's denial of his claim was an unreasonable application of <u>Strickland</u>.

The trial transcript shows that the testimony of Deputy Floyd appeared to be inconsistent with Deputy Forte's testimony with regard to whether Petitioner and Deputy Floyd were in Petitioner's home when Deputy Forte discovered the stolen items. However, even if defense counsel highlighted this inconsistency to the jury, there is no reasonable probability that the jury would have acquitted Petitioner. Any factual dispute as to who was in the home when the items were discovered was irrelevant to the issue in dispute at trial, that is, whether Petitioner took the items from Ms. Coggeshall's home (Petitioner admitted he was in possession of the items). Furthermore, Deputy Floyd and Deputy Forte testified consistently regarding the issue in dispute as they both testified that Petitioner admitted he took the items from Ms. Coggeshall's home. They also testified consistently with regard to Petitioner's being advised of his <u>Miranda</u> rights, his indicating he understood those rights, and his consenting to the search of his home. In light of this evidence, Petitioner failed to

demonstrate a reasonable probability that he would have been acquitted of the charges if counsel had highlighted the inconsistency in the officers' testimony as to who was in Petitioner's home at the time the stolen items were discovered. Therefore, Petitioner failed to establish that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or that the decision was an unreasonable application of <u>Strickland</u>.

  **F.**  <u>Ground Six: "Counsel failed to object to State's use of false and unknown burglary to impeach defendant."</u>

  Petitioner contends defense counsel should have objected to the State's questioning him about a stolen vacuum cleaner (Doc. 1 at 9–10). Petitioner asserts the prosecutor attempted to show a relationship between the instant offenses and Petitioner's offering to pay Ms. Coggeshall for a vacuum cleaner stolen by her boyfriend, but the stolen vacuum cleaner had nothing to do with the offenses for which he was on trial (*id.*). He further contends that his testimony, that he had never been in the victim's home, did not "open the door" to the prosecutor's questioning him about the vacuum cleaner, and counsel should have objected on relevancy grounds (Doc. 1 at 9–10; Doc. 2 at 14–15). Petitioner further argues that counsel should have moved for a mistrial based upon the prejudicial effect of the trial court's admission of this evidence, since it was possible that the jury convicted him in part because of the irrelevant evidence (Doc. 1 at 9–10; Doc. 2 at 15).

  Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 11 at 44). Respondent contends Petitioner failed to demonstrate entitlement to relief under the AEDPA (*id.* at 44–45).

  1.  Clearly Established Federal Law

  The Supreme Court's standard for analyzing claims of ineffective assistance of counsel is set forth *supra*.

  2.  Federal Review of State Court Decision

  Petitioner raised this claim as Ground Ten in his Rule 3.850 motion (Ex. S at 25–26). The state court determined that Petitioner "opened the door" to evidence on the subject of his previously stealing a vacuum cleaner from the victim by testifying that he had never been in the victim's residence and had never taken any property (*id.* at 63). The court further determined that this testimony then "opened the door" to testimony regarding Petitioner's payment to the victim to

compensate her for the stolen vacuum cleaner and to induce her to drop the pending charges (*id.*). The court concluded that Petitioner failed to demonstrate that introduction of the testimony was unfairly prejudicial; therefore, he was not entitled to relief (*id.*).

"As an evidentiary principle, the concept of 'opening the door' allows the admission of otherwise inadmissible testimony to 'qualify, explain, or limit' testimony or evidence previously admitted." Rodriguez v. State, 753 So. 2d 29, 42 (Fla. 2000); Simmons v. State, 790 So. 2d 1177, 1180 (Fla. 3d DCA 2001) (defendant's testimony on direct examination that he was the true victim in the case, that on the day in question the victim (the defendant's girlfriend) had come at him with a gun and violently pistol whipped him, and that she had repeatedly threatened him with violence in the past, and defendant's testimony on cross-examination that he objected to domestic violence, denied ever being violent with the victim/girlfriend or anyone else, and generally portrayed himself as the peaceful victim of a very jealous and aggressive woman, opened the door to the State's impeaching this testimony with evidence that defendant beat a different girlfriend); Washington v. State, 758 So. 2d 1148, 1155 (Fla. 4th DCA 2000) (a defendant opens door to evidence of prior bad acts when he offers misleading testimony or makes a specific factual claim that the State has a right to correct so that the jury will not be confused); Mosley v. State, 739 So. 2d 672, 680–81 (Fla. 4th DCA 1999) (where defendant's statements on direct examination, that he didn't "deal with" cocaine, never used it, and never had a cocaine pipe in his possession, were intended to convey to the jury that he had nothing whatsoever to do with cocaine, it was permissible for State to inquire concerning defendant's convictions for delivery of cocaine, possession of cocaine, possession of cocaine with intent to deliver, and tampering with evidence (cocaine), as this evidence was relevant and proper to counter defendant's claimed lack of any involvement with cocaine; and it was likewise permissible for State to inquire whether defendant had cocaine in his possession in each of those prior instances because defendant presented an identity defense and claimed that police had the wrong person in almost all of his prior convictions); Bozeman v. State, 698 So.2d 629, 630–31 (Fla. 4th DCA 1997) ("To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled."); Allred v. State, 642 So. 2d 650 (Fla. 1st DCA 1994) (by testifying that he lacked a violent propensity and asserting that he had never hit a woman, defendant opened

the door to rebuttal evidence that he had previously physically assaulted his former wife and a girlfriend); Fletcher v. State, 619 So. 2d 333 (Fla. 1st DCA 1993) (where defendant testified during his direct examination that he had never pointed a gun at anybody and that he was a responsible user of firearms, the state was properly allowed to introduce evidence of an episode wherein the defendant used a firearm recklessly); Hernandez v. State, 569 So. 2d 857 (Fla. 2d DCA 1990) (where, during cross-examination, defendant volunteered statements that he had never done any drug-related deals in his life, he opened the door to questioning about a heroin deal he had arranged two days prior to the instant offenses); Davis v. State, 216 So. 2d 87 (Fla. 2d DCA 1968) (trial court did not err in allowing the state to cross-examine defendant about charges of exhibiting a dangerous weapon where, on direct examination, defendant had repeatedly asserted that he never possessed firearms of any nature since moving to Sarasota).

Here, the state court's determination that the prosecutor's line of questioning was permissible was based purely on Florida law. As previously discussed, this court must defer to the state court's determinations of state law issues, including this determination that defense counsel had no meritorious basis to object to the prosecutor's questioning Petitioner about the vacuum cleaner. Indeed, the trial transcript shows that Petitioner took the stand in his own defense and testified that he had never been in the victim's residence, and he did not take the items from her trailer (Doc. 11, Ex. C at 27–29). He also testified that he took the items from the area near Ms. Coggeshall's garbage can, thereby suggesting he did not intend to steal them but simply believed the items had been discarded (*id.* at 24–25). This opened the door for the prosecution to rebut his testimony that he had never been in her residence with evidence that he had previously entered Ms. Coggeshall's residence and taken a vacuum cleaner. This evidence included the State's asking Petitioner whether he had ever been in Ms. Coggeshall's residence, whether he has ever taken any property out of it, and whether he previously gone into her residence and taken a vacuum cleaner (*id.* at 31–32, 34). Petitioner responded no, which then opened the door to the prosecutor's eliciting testimony from Ms. Coggeshall that Petitioner reimbursed her for a vacuum cleaner/carpet shampooer that he admitted he had stolen from her home (*id.* at 50).

In light of the state court's determination that defense counsel had no meritorious basis for objecting to the prosecutor's eliciting testimony about the stolen vacuum cleaner, Petitioner failed

to demonstrate deficient performance by counsel or that there is a reasonable probability that the trial court would have excluded this evidence even if counsel had argued the issue at the side-bar conference, when the admissibility of this evidence was discussed.  Therefore, the state court's denial of this ineffective assistance of counsel claim was not contrary to or an unreasonable application of <u>Strickland</u>.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 19<u>th</u> day of February 2010.


/s/ Elizabeth M. Timothy
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**